IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff<br><br>v.<br><br>$7,700 IN U.S. CURRENCY; AND SIXTY-ONE (61) ASSORTED MONEY ORDERS TOTALING $42,495.00 IN U.S. CURRENCY<br><br>Defendant. | NO. 3:19-CV |

## COMPLAINT FOR FORFEITURE

Plaintiff, the United States of America files this verified complaint in rem against the defendant property, and states:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction of this cause of action in rem pursuant to 28 U.S.C. §§ 1345 and 1355(a). Venue is proper under 28 U.S.C. § 1355(b)(1) and 28 U.S.C. § 1395(b).

2. The statutory basis for this suit is 18 U.S.C. §§ 981 and 1956 and 21 U.S.C. § 881. Also applicable are 28 U.S.C. §§ 2461 and 2465, 18 U.S.C. § 983, and 28 U.S.C. Rule G, Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions (Supplemental Rules).

### THE DEFENDANT PROPERTY AND ITS LOCATION

3. The defendant property is comprised of $7,700 in U.S. currency and sixty-one (61) money orders from various financial institutions totaling $42,495 in U.S. currency seized on or about October 24, 2018 by agents and task force officer working on behalf of the Drug Enforcement Administration (DEA).

4. The defendant property is currently in the custody and management of the DEA in the Northern District of Texas.

## POTENTIAL CLAIMANTS TO THE DEFENDANT PROPERTY

5. This action in rem is filed in the United States District Court, pursuant to the provisions of 18 U.S.C. § 983(a)(3)(A), because a verified claim to the defendant property was submitted to DEA on December 13, 2018, by or on behalf of the following individual:

> Fuad Nasser
> c/o Dionne Choyce
> THE CHOYCE LAW FIRM
> 1438 Del Paso Blvd
> Sacramento, CA 95815

## FACTS AND BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 18 U.S.C. §§ 981 and 1956 because it represents proceeds of an unlawful activity used to promote the carrying on of specified unlawful activity.

7. The defendant property is also subject to forfeiture pursuant to 21 U.S.C. § 881 because it represents moneys furnished or intended to be furnished in exchange for a

controlled substance, proceeds traceable to such an exchange, or moneys used or intended to be used to facilitate any violation of Title 21.

8. On October 24, 2018, DEA Dallas Airport Interdiction Group was conducting consensual interdiction operations at DFW Airport when DEA Task Force Officers McBride and Garcia observed two subjects later identified as Fuad Nasser and Antoine Jackson arrive at Gate C-8 as boarding had just begun.

9. TFOs McBride and Garcia observed nervous behavior in both Nasser and Jackson, noticeably different from any other passenger, in that they were unusually moving in place, shifting their hands and feet, and constantly checking their surroundings and looking back at the gate.

10. TFOs McBride and Garcia approached Nasser and Jackson and identified themselves verbally and by showing their badges and picture identification. Nasser and Jackson agreed to speak with the officers regarding their travels. The officers did not block Nasser's or Jackson's path and both were free to walk away at any time.

11. TFO McBride first spoke with Jackson who was observed to be visibly shaking. Jackson stated that Nasser and he were friends and that they had traveled to "Carolina" to visit Jackson's family and friends. Jackson was unable to provide any details on their trip to "Carolina" except that he visited family and friends.

12. Jackson further stated that Nasser and he were flying back home to Oakland and provided a boarding pass for American Airlines flight 890 from DFW Airport to Oakland, CA.

13. When TFO McBride would ask Jackson a question he would act as if he couldn't hear TFO McBride or that he did not understand TFO McBride's question.

14. Jackson had no carry-on luggage and boarded the aircraft following the interview.

15. TFO Garcia spoke with Nasser, who appeared to be very nervous as he avoided eye contact, had cracking/shaky speech, and his hands were visibly shaking.

16. Nasser acknowledged that Jackson and he were traveling together but gave conflicted statements about his travels. Nasser first stated that Jackson and he had driven from Oakland to Memphis, Tennessee and then to Baltimore, Maryland. Nasser then changed his statement and stated they flew to Baltimore and then drove to Memphis.

17. Nasser stated that Jackson and he were traveling for business and that he owns several "Smoke Shops". Nasser was not able to provide any details on those smoke shops or how he even knew Jacskon.

18. TFO Garcia asked Nasser if he was traveling with any contraband, to which Nasser replied no.

19. TFO Garcia asked Nasser if he was traveling with a large amount of U.S. or foreign currency and Nasser stated that he was not.

20. TFO Garcia asked Nasser if he had packed his own bag and Nasser replied that he did.

21. TFO Garcia asked Nasser for consent to search the Nasser's back pack Nasser stated provided consent for the search.

22. TFO's McBride and Garcia conducted the search of Nasser's back pack and immediately located one (1) loose bundle of U.S. currency concealed in a nylon zipper bag concealed in the backpack.

23. TFO's McBride and Garcia then located a second loose bundle of U.S. currency in a wallet concealed in a pocket of a jacket in the backpack.

24. TFO's McBride and Garcia also located a loose bundle of money orders concealed in an envelope inside the backpack.  None of the money orders were addressed to any payee, and none of the money orders contained any purchaser information.

25. TFO Garcia asked Nasser how much U.S. currency he was carrying and he stated about $7,000 in U.S. currency and $40,000 in money orders.

26. Nasser claimed the U.S. currency and money orders were a result of real estate transactions. Nasser could not provide any evidence of the claimed real estate transactions, nor could Nasser state how or from whom he obtained the U.S. currency and money orders.

27. TFO Garcia asked why Nasser stated he did not have a large amount of U.S. currency and Nasser responded that it was "below the legal limit."

28. Fort Worth Police Department Officer Donal Carmen and his K-9 partner performed separate open-air analyses of the U.S. currency and money orders, and the K-9 alerted to the odor of narcotics on both the U.S. currency and the money orders.

29. TFOs McBride and Garcia seized the U.S. currency, money orders, and Nasser's two cell phones, providing Nasser with a DEA-12 receipt for the undetermined amount of U.S. currency and money orders pending an official count.

30. TFOs McBride and Garcia placed the currency and money order bundles inside two self-sealing evidence envelopes and assigned them the designations Exhibit N-1 and N-2. TFOs McBride and Garcia transported Exhibits N-1(U.S. Currency) and Exhibit N-2 (money orders) first to the Texoma HIDTA. TFO's McBride and Abrams logged the exhibits with the DEA Dallas Field Division high value custodian for safekeeping.

31. On October 30, 2018 TFO McBride and S/A Ken Adames obtained Exhibit N-1 from the DEA Dallas Field Division High Value Custodian and transported Exhibit N-1 to Loomis in Dallas, TX to obtain an official count. TFO McBride and S/A Adames obtained a Deposit Slip from Loomis and brought the Deposit Slip to DEA Dallas ARG. The official count is $7,700.00 in U.S. currency (N-1) and $42,495.00 in money orders (N-2), for a total of $50,195.00.

## RELIEF SOUGHT

Therefore, the United States requests the following:

A. That the Clerk of the Court issue a warrant for the arrest of the defendant property, pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

B. That the United States Marshal's Service arrest the defendant property, pursuant to the warrant, as provided by Rule G(3)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

C.  That the United States publish notice of the complaint for forfeiture on the website www.forfeiture.gov for at least 30 consecutive days, in accordance with Rule G(4)(a)(iv)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions;

D.  That the United States Marshal's Service serve notice, pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, on any person reasonably appearing to be a known potential claimant, advising the person of the date of notice; of the deadline for filing a claim; that an answer or motion under Rule 12(b) must be filed no later than 21 days after the filing of the claim; and of the name of the Assistant United States Attorney to be served with the claim and answer;

E.  That the court, after all proceedings are had on this complaint for forfeiture, declare the defendant property forfeited to the United States according to law;

F.  That the court appropriately tax all costs and expenses incurred by the United States in obtaining the forfeiture of the defendant property against any persons or entities who filed a verified claim and answer in this case; and

G.  That the court grant the United States any further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,

ERIN NEALY COX
UNITED STATES ATTORNEY

/s/ *Gregory S. Martin*
GREGORY S. MARTIN
Assistant United States Attorney
California Bar No. 294482
1100 Commerce Street, Third Floor
Dallas, Texas  75242-1699
Telephone: 214-659-8600
E-mail: gregory.martin2@usdoj.gov

## VERIFICATION OF COMPLAINT

I, Michael A. McBride, declare under penalty of perjury that the following is true and correct to the best of my knowledge.

I am an Officer with the Irving Police Department and a Task Force Officer with the Drug Enforcement Administration's Dallas Airport Interdiction Group. I was present at the seizure of the defendant property and I have been assigned to assist in the forfeiture of the defendant property. I have read the foregoing Complaint for Forfeiture and know its contents. The factual information contained in the Complaint for Forfeiture is true and correct.

Date: March 13, 2019

_____
Michael A. McBride
Task Force Officer, DEA Dallas Airport Interdiction Group

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Verified Complaint for Forfeiture In Rem and Verification were mailed via certified mail: return receipt requested to:

Fuad Nasser
c/o Dionne Choyce
THE CHOYCE LAW FIRM
1438 Del Paso Blvd
Sacramento, CA 95815

on this 13th day of March, 2019.

/s/ *Gregory S. Martin*
GREGORY S. MARTIN
Assistant United States Attorney